**GORLICK, KRAVITZ & LISTHAUS, P.C.**
**Bruce L. Listhaus (BL2381)**
**Joy K. Mele (JM0207)**
**blisthaus@gkllaw.com**
**jmele@gkllaw.com**
**17 State Street, 4th Floor**
**New York, New York 10004**
**Tel. (212) 269-2500**
**Fax. (212) 269-2540**
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

| | |
|---|---|
| **MASON TENDERS DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND, TRAINING FUND, HEALTH AND SAFETY FUND, and DOMINICK GIAMMONA, as FUNDS' CONTRIBUTIONS/DEFICIENCY MANAGER,** : |  |
| | : |
| **Plaintiffs,** : | **COMPLAINT** |
| | : |
| -against- : | |
| | : |
| **ROCKMORE CONTRACTING CORP.** : | |
| | : |
| **Defendants.** : | |

-------------------------------------------------------------------------X

Plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety Fund ("Funds") and Dominick Giammona, in his fiduciary capacity as Funds' Contributions/Deficiency Manager ("Giammona") (collectively, "plaintiffs"), by and through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1. Plaintiffs bring this civil action, *inter alia,* pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended ("ERISA") (29 U.S.C. §§ 1132(a)(3), 1145), and Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C.

§ 185) ("Taft-Hartley Act"), by the plaintiffs for equitable relief under ERISA and for breach of contract.

2.      This Complaint alleges that, by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, defendant Rockmore Contracting Corp. ("Rockmore") violated one or more collective bargaining agreements, the Funds' respective trust agreements, ERISA, and the Taft-Hartley Act.

3.      Jurisdiction of this Court is invoked under the following statutes:

      a.      ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132[e][1] and [f]);

      b.      Taft-Hartley Act § 301 (29 U.S.C. § 185);

      c.      28 U.S.C. § 1331 (federal question);

      d.      28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

      e.      28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132[e][2]) and Taft-Hartley Act § 301 (29 U.S.C. § 185[c]) because the Funds are administered in this district and the contractual breaches occurred within this district and defendant Rockmore resides and/or may be found in this district.  Pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132[e][2]), service of process may be made on Rockmore in any district in which Rockmore may be found.

**PARTIES**

5.      The Funds are jointly-administered, multi-employer, labor-management trust funds, established and maintained pursuant to various collective bargaining agreements in accordance with Taft-Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. §§ 186[c][5] and [c][6]).

2

The Funds are also employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002[1], [2], [3] and 1132[d][1]), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002[37] and 1145). ERISA § 502(d)(1) (29 U.S.C. § 1132[d][1]) authorizes the Funds to maintain suits as independent legal entities.

6.      The Funds provide fringe benefits to eligible employees on whose behalf employers in the building and construction industry make contributions to the Funds, as required by collective bargaining agreements between such employers and the Mason Tenders District Council of Greater New York ("Union").

7.      The Funds, as collections agent and trustees of the fringe benefit contributions made by employers pursuant to their collective bargaining agreements with the Union, are third-party beneficiaries of the collective bargaining agreements.

8.      The Funds are also the duly authorized collection agent for the Union and the Mason Tenders District Council Political Action Committee ("PAC").

9.      The Funds maintain their offices and are administered at 520 Eighth Avenue, Suite 600, New York, New York 10018.

10.     Plaintiff Giammona is the Funds' Contributions/Deficiency Manager and is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002[21] and 1132). Giammona brings this action in his fiduciary capacity.

11.     Non-party Union is a labor organization within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185). The Union represents employees in an industry affecting commerce, as defined by Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002[4]).

12.     Defendant Rockmore is a for-profit domestic corporation doing business in the State of New York and is an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C.

§§ 1002[5] and 1145).

13.     Rockmore is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185).

14.     Upon information and belief, Rockmore's principal office is located at 80 Remington Blvd., Ronkonkoma, New York 11779.

## BACKGROUND

15.     Upon information and belief, from July 21, 2008 through around March 14, 2016, Rockmore was a member of the Building Contractors Association, Inc. ("Association").

16.     The Association was and is the exclusive bargaining agent for all its members for the purposes of collective bargaining with the Union.

17.     The Association entered into a collective bargaining agreement with the Union for the period of July 1, 2010 through June 30, 2014 ("2010-2014 Agreement").

18.     The 2010-2014 Agreement was extended to the period of July 1, 2014 through June 30, 2018, by a Memorandum of Understanding ("2014-2018 MOU") (collectively, the 2010-2014 Agreement as amended by the 2014-2018 MOU are hereinafter, the "BCA Agreement").

19.     Upon information and belief, on or around March 14, 2016, Rockmore withdrew its membership from the Association.

20.     Upon its withdrawal from the Association, Rockmore, pursuant to Article XII of the BCA Agreement, became bound by the collective bargaining agreement between the Union and independent contractors ("Independent Agreement") for the remaining term of the BCA Agreement (the Independent Agreement and the BCA Agreement are hereinafter the "Agreements").

4

21.     At the time Rockmore withdrew its membership from the BCA, there was in effect an Independent Agreement for the period of July 1, 2014 through June 30, 2017.

22.     Article XII of the Independent Agreement contains an "Evergreen Clause," which provides that the Independent Agreement remains in effect year-to-year after its initial term unless either signatory provides the other with written notice at least sixty days, but no more than ninety days, before expiration of the Independent Agreement.

23.     Upon information and belief, neither Rockmore nor the Union have provided written notice of intent to terminate or otherwise modify the Independent Agreement.

24.     The Agreements require Rockmore to, *inter alia*: (i) make fringe benefit contributions to the Funds; (ii) submit to the Funds reports detailing the number of hours that Rockmore employees perform work within the trade and geographical jurisdictions of the Union ("Covered Work"); (iii) deduct dues checkoffs and PAC contributions from the wages of employees who perform Covered Work and authorize such deductions in writing; (iv) remit all deducted dues checkoffs and PAC contributions to the Union; (v) permit the Funds and/or their designated representatives to audit Rockmore's books and records; (vi) apply interest on delinquent fringe benefit contributions; and (vii) impose the imputed costs of the audit upon employers found to be substantially delinquent in the payment of fringe benefit contributions.

25.     Article VI, § 18(d) of the BCA Agreement requires Rockmore to pay a penalty of $400 if it fails to produce the books and records necessary for an audit.

26.     Plaintiffs previously commenced an action against Rockmore on October 27, 2016, in the Southern District of New York, captioned *Mason Tenders District Council Welfare Fund et al. v. Rockmore Contracting Corp.*, Docket No. 16 Civ. 8386 (JPO) ("2016 Litigation") for the payment of contributions for the period February 27, 2014 through December 30, 2015.

27.     The parties to the 2016 Litigation entered into a stipulation "So Ordered" by the Court wherein, *inter alia*, Rockmore agreed to remain current in its payment of fringe benefit contributions, dues checkoffs, and PAC contributions under the terms of the Agreements ("2016 Stipulation of Settlement").

28.     The 2016 Stipulation of Settlement also explicitly reserved plaintiffs' right to seek recovery of fringe benefit contributions, dues checkoffs and PAC contributions for Covered Work performed by Rockmore employees on or after December 31, 2015

29.     The Funds' auditors performed an audit of Rockmore's books and records ("Audit") for the period of December 31, 2015 through June 30, 2017 ("Audit Period").

30.     The Audit revealed that Rockmore failed to comply with its obligations under the Agreements by failing to pay fringe benefit contributions, dues checkoffs, and PAC contributions due to the Funds for 9,787.5 hours of Covered Work performed by its employees during the Audit Period.

31.     Upon information and belief, Rockmore also paid the incorrect fringe benefit rate for 352 hours of Covered Work performed during the Audit Period.

32.     By failing to remain current in its payment of fringe benefit contributions, dues checkoffs and PAC contributions, Rockmore breached the terms of the 2016 Stipulation of Settlement.

33.     On October 23, 2017, the Funds sent a written demand to Rockmore for payment of $283,612.62 in principal fringe benefit contributions, and $20,913.75 in principal dues checkoffs and PAC contributions for the Audit Period, plus interest and the imputed costs of the Audit.

34.     Rockmore, in violation of the Agreements, has not paid any of the principal

audited deficiency, interest or imputed costs of the Audit.

35.     Upon information and belief, Rockmore continues to perform Covered Work.

## FIRST CAUSE OF ACTION
### (PLAINTIFFS' BREACH OF CONTRACT CLAIM AGAINST ROCKMORE FOR DELINQUENT FRINGE BENEFIT CONTRIBUTIONS DURING THE AUDIT PERIOD)

36.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "35" of this Complaint, as if fully set forth herein.

37.     Pursuant to the Agreements, Rockmore was obligated to pay fringe benefit contributions to the Funds for each hour of Covered Work performed by its employees.

38.     Rockmore failed to pay all contractually required fringe benefit contributions for Covered Work performed by its employees during the Audit Period, resulting in principal fringe benefit contributions delinquency of $283,612.62.

39.     Rockmore's failure to pay required fringe benefit contributions to the Funds during the Audit Period is a breach of the Agreements.

40.     The Agreements require employers found delinquent in their payment of fringe benefits to pay, in addition to the fringe benefit contributions, "interest on the unpaid amounts from the date the fringe benefit contributions were due, until the date of payment, at the rate prescribed under Section 6621 of Title 26 of the United States Code." BCA Agreement, Article VI, § 18(e); Independent Agreement, Article VI, § 17(f).

41.     The Agreements provide that if the Funds prevail in an action to recover unpaid fringe benefit contributions, Rockmore must pay to the Funds, in accordance with the judgment of the court: (i) the unpaid contributions; (ii) interest on unpaid and late paid contributions; (iii) interest on the unpaid contributions as and for liquidated damages; (iv) reasonable attorneys' fees

and costs of the action; and (v) such other legal or equitable relief as the court deems appropriate. BCA Agreement, Article VI, § 18(f); Independent Agreement, Article VI, § 17(g).

42.     Independent Agreement, Article VI, § 17(j) provides that if Rockmore fails to pay the required fringe benefit contributions within seven (7) days of their due dates, it "shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages." Independent Agreement, Article VI, § 17(j).

43.     Rockmore is liable to plaintiffs under the Agreements for failing to make required fringe benefit contributions for Covered Work performed by Rockmore employees during the Audit Period in the principal amount of $283,612.62, plus interest, liquidated damages, and plaintiffs' reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(PLAINTIFFS' CLAIM FOR BREACH OF ERISA**
**OBLIGATIONS AGAINST ROCKMORE)**

44.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "43" of this Complaint, as if fully set forth herein.

45.     ERISA § 515 requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements. 29 U.S.C. § 1145.

46.     Rockmore is an employer under ERISA and during the Audit Period, it was required to pay fringe benefit contributions to the Funds pursuant to the terms of the Agreements.

47.     During the Audit Period, Rockmore failed to pay all required fringe benefit contributions to the Funds pursuant to the Agreements.

48.     Rockmore's failure to pay all required fringe benefit contributions during the

Audit Period violates ERISA § 515, 29 U.S.C. § 1145.

49.     Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145),

the Court is required by ERISA to award the Funds: (a) the unpaid fringe benefit contributions;

(b) interest on the unpaid and/or untimely-paid contributions; (c) an amount equal to the greater

of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan

in an amount not in excess of 20 percent of the unpaid contributions; (d) reasonable attorneys'

fees and costs of the action; and (e) such other legal or equitable relief as the Court deems

appropriate. 29 U.S.C. § 1132(g)(2).

50.     The Funds' trust agreements, as amended, provide that interest and liquidated

damages shall accrue on delinquent fringe benefit contributions at the rate prescribed in United

States Internal Revenue Code § 6621, 26 U.S.C. § 6621.

51.     Rockmore failed to pay $283,612.62 to the Funds in required fringe benefit

contributions for Covered Work performed by its employees during the Audit Period and is

liable to the Funds under ERISA § 502 (29 U.S.C. §1132) for all unpaid fringe benefit

contributions, interest on the unpaid principal, liquidated damages, plaintiffs' reasonable

attorneys' fees and costs incurred in this action, and such other legal or equitable relief as the

Court deems appropriate.

### THIRD CAUSE OF ACTION
**(PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT AGAINST ROCKMORE
FOR FAILURE TO REMIT DUES CHECKOFFS AND
PAC CONTRIBUTIONS DURING THE AUDIT PERIOD)**

52.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through

"51" of this Complaint, as if fully set forth herein.

53.     The Agreements require Rockmore to, *inter alia*: (i) deduct dues checkoffs and

PAC contribution from the wages of employees who perform Covered Work and authorize deductions of dues checkoffs and PAC contributions in writing, and (ii) remit all deducted dues checkoffs and PAC contributions to the Funds as collection agent for the Union and PAC.  BCA Agreement, Article VI, §§ 3, 11; Independent Agreement, Article VI, §§ 3, 8.

54.     During the Audit Period, Rockmore failed to remit $20,913.75 in principal dues checkoffs and PAC contributions from the wages of Rockmore employees who performed Covered Work and gave written authorization for such deductions.

55.     Rockmore's failure to deduct and/or remit dues checkoffs and PAC contributions during the Audit Period are breaches of the Agreements and the PLAs.

56.     Independent Agreement, Article VI, § 17(j) provides that if Rockmore fails to pay the required dues checkoffs and PAC contributions within seven (7) days of their due dates, it "shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages."

57.     Plaintiffs are entitled to interest on the delinquent dues checkoffs and PAC contributions under New York Civil Practice Law and Rules ("CPLR") §§ 5001 and 5004.

58.     Rockmore is liable under the Agreements and the PLAs for undeducted and/or unremitted deducted dues checkoffs and PAC contributions during the Audit Period in the principal amount of $20,913.75, interest at the New York State statutory rate, and liquidated damages at the rates set by the Agreements.

## FOURTH CAUSE OF ACTION
### (PLAINTIFFS' BREACH OF CONTRACT CLAIM AGAINST ROCKMORE FOR AUDIT COSTS)

59.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "58" of this Complaint, as if fully set forth herein.

60.     Where the audit determines that an employer is substantially delinquent in its payment of fringe benefit contributions to the Funds, the Agreements require the employer to pay the imputed cost of the Audit as follows:

> If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds … the Employer shall bear the imputed cost of the audit as set forth below:

$$\frac{\text{total audited deficiency}}{150} \times \text{number of months audited} = \text{imputed cost of audit}$$

> Substantially delinquent is defined as any deficiency in the payment of fringe benefit contributions to the Trust Funds … in excess of 10% of the fringe benefit contributions paid to the Trust Funds … during the period that is the subject of the audit.   In the event the Trust Funds … bring an action to recover the imputed costs of the audit, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

BCA Agreement, Article VI, § 18(c); Independent Agreement, Article VI, § 17(d).

61.     Rockmore paid to the Funds $858,778.36 in fringe benefit contributions during he Audit Period.

62.     Rockmore is substantially delinquent in its payment of fringe benefit contributions to the Funds because its audited fringe benefit contributions deficiency of $283,612.62 is more than ten-percent of the fringe benefits contributions paid to the Funds during the Audit Period.

63.     Following the Agreements' contractual formula for calculating the imputed cost of the Audit, the imputed cost of the Audit is $35,924.26.

64.     The Funds have duly demanded the imputed cost of the Audit from Rockmore.

65.     Rockmore has not paid the imputed cost of the Audit.

66.     Rockmore's failure to pay the imputed cost of the Audit is a breach of the Agreements.

67.     Rockmore is liable under the Agreements for the imputed cost of the Audit, and plaintiffs' reasonable attorneys' fees and costs. BCA Agreement, Article VI, § 18(c); Independent Agreement, Article VI, § 17(d).

## FIFTH CAUSE OF ACTION
### (PLAINTIFFS' DEMAND FOR AN ORDER DIRECTING ROCKMORE TO PERMIT AN AUDIT OF ITS BOOKS AND RECORDS)

68.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "67" of this Complaint, as if fully set forth herein.

69.     Independent Agreement, Article VI, § 17(a) requires Rockmore to make its books and records available "at all reasonable times for inspection and audit by the accountants or other representatives of the … Funds … including, without limitation, all payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company Reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, equipment leases, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of worker's compensation coverage, and any other items concerning payroll(s)." Independent Agreement, Article VI, § 17(a).

70.     The Independent Agreement also requires Rockmore to "retain, for a minimum period of six years, payroll and related records necessary for the conduct of a proper audit." *Id.*

12

71.     ERISA mandates that "every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

72.     Pursuant to the Independent Agreement, plaintiffs hereby demand an order directing Rockmore to permit and cooperate with the Funds and/or their designated representatives in the conduct of an audit of Rockmore's books and records for the period of July 1, 2017 through the present.

### SIXTH CAUSE OF ACTION
### (PLAINTIFFS' CLAIM FOR FRINGE BENEFIT CONTRIBUTIONS, DUES CHECKOFFS, PAC CONTRIBUTIONS, AND DAMAGES FOUND PURSUANT TO AN AUDIT OF ROCKMORE)

73.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "72" of this Complaint, as if fully set forth herein.

74.     Independent Agreement, Article VI, §§ 3-12 require Rockmore to pay fringe benefits contributions, dues checkoffs, and PAC contributions found due and owing pursuant to an audit of Rockmore's books and records.

75.     If an audit of Rockmore's books and records finds it to be substantially delinquent, as defined in Article VI, § 17(d) of the Independent Agreement, Rockmore shall bear the imputed cost of the audit.

76.     Accordingly, Rockmore is liable to the Funds for all unpaid fringe benefit contributions, dues checkoffs, and PAC contributions found due and owing pursuant to an audit of its books and record, plus interest and plaintiffs' reasonable attorneys' fees and costs, and in the event it is substantially delinquent, the imputed cost of the audit.

## SEVENTH CAUSE OF ACTION
### (PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF AGAINST ROCKMORE)

77.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "76" of this Complaint, as if fully set forth herein.

78.     Among other things, the Agreements and/or the PLAs require Rockmore to: (i) report to the Funds all hours of Covered Work performed by its employees; and (ii) the timely payment of fringe benefit contributions, dues checkoffs and PAC contributions due and owing for each hour of Covered Work performed by its employees.

79.     During the Audit Period, Rockmore breached its obligations under the Agreements to report all hours of Covered Work and pay all required fringe benefit contributions, dues checkoffs, and PAC contributions.

80.     The Independent Agreement states that "[w]here payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the . . . Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement, from failing, refusing or neglecting to submit the required employer remittance reports and/or to pay the required contributions to the . . . Funds, and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement." Independent Agreement, Article VI, § 17(l).

81.     Upon information and belief, Rockmore continues to perform Covered Work under the Independent Agreement.

82.     Rockmore's prior and current conduct in failing to make required fringe benefit contributions, dues checkoffs, and PAC contributions under the Agreements during the Audit

Period demonstrates a strong likelihood that Rockmore will continue such violations in the future.

83.     In the absence of injunctive relief, plaintiffs have no adequate remedy at law to ensure that Rockmore will abide by the terms of the Agreements now and in the future.

84.     Plaintiffs will suffer immediate and irreparable injury unless the Court issues an injunction that that prohibits Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as it remains bound by the Independent Agreement, from failing, refusing, or neglecting to: (i) report to the Funds all hours of Covered Work performed by Rockmore's employees; (ii) pay all required fringe benefits contributions, dues checkoffs and PAC contributions; and (iii) cooperate with an audit of Rockmore's books and records for the period of July 1, 2017 through the present.

85.     Such injunction is in the public interest as it will help protect the interests of employees and their beneficiaries who are enrolled in the Funds.

86.     Accordingly, the Funds request that this Court issue a permanent injunction prohibiting Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as Rockmore remains obligated to do so by, from failing, refusing or neglecting to: (i) report to the Funds all hours of Covered Work performed by Rockmore's employees; (ii) pay all required fringe benefits contributions, dues checkoffs and PAC contributions; and (iii) cooperate with audits of Rockmore's books and records.

### EIGHTH CAUSE OF ACTION
### (PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF
### AGAINST ROCKMORE UNDER ERISA)

87.     Plaintiffs repeat and re-allege each allegation contained in paragraphs "1" through "86" of this Complaint, as if fully set forth herein.

88.     Among other things, the Agreements require Rockmore to: (i) report to the Funds all hours of Covered Work performed by its employees; and (ii) the timely payment of fringe benefit contributions for each hour of Covered Work performed by its employees.

89.     During the Audit Period, Rockmore breached its obligations under the Agreements and/or the PLAs to report all hours of Covered Work and pay all required fringe benefit contributions.

90.     Rockmore's breach of its obligation to pay fringe benefit payments pursuant to the terms of the Agreements is also a breach of Rockmore's statutory obligations under ERISA.

91.     Upon information and belief, Rockmore continues to breach its reporting and payment obligations and thus continues to breach its statutory obligations under ERISA.

92.     Rockmore's prior and current conduct in failing to make required payments under the Agreements, in violation of its ERISA obligations demonstrates a strong likelihood that Rockmore will continue to breach its ERISA obligations in the future.

93.     The Funds have no adequate remedy at law to ensure that Rockmore will abide by its ERISA obligations.

94.     The Funds will suffer immediate and irreparable injury unless the Court issues an injunction prohibiting Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as it remains obligated to do so by ERISA, from failing, refusing or neglecting to pay all required fringe benefit contributions to the Funds.

95.     Such an injunction is in the public interest as it is consistent with the purpose of ERISA which is to protect the interests of employees and their beneficiaries who are enrolled in employee benefits plans.

96.     Accordingly, the Funds request that this Court issue a permanent injunction prohibiting Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as Rockmore remains obligated to do so by ERISA, from failing, refusing or neglecting to pay all required fringe benefit contributions to the Funds.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against Rockmore:

A.     for payment of delinquent fringe benefit contributions in the principal amount of $283,612.62 for the Audit Period;

B.     for payment of all unremitted and/or undeducted dues checkoffs and PAC contributions in the principal amount of $20,913.75 for the Audit Period;

C.     for interest on all delinquent fringe benefit contributions owed during the Audit Period at the rates set by the Agreements and/or ERISA;

D.     for interest on all unpaid dues checkoffs and PAC contributions owed during the Audit Period at the statutory rate and/or the rates set by the Agreements;

E.     for liquidated damages at the rates set by the Agreements and/or ERISA;

F.     for payment of the imputed cost of the audit of the Audit Period in the amount of $35,924.26;

G.     for an order requiring Rockmore to cooperate with an audit of its books and records for the period of July 1, 2017 through the present;

H.     for payment of all delinquent fringe benefit contributions, dues checkoff and PAC contributions found due and owing pursuant to the audit of

17

Rockmore's books and records for the period of July 1, 2017 through the present;

I.      for interest on all delinquent fringe benefit contributions found due and owning pursuant to an audit of Rockmore's books and records for the period of July 1, 2017 through the present at the statutory rate and/or the rate set by the Independent Agreement;

J.      for interest on all unpaid dues checkoffs and PAC contributions found due and owing pursuant to an audit of Rockmore's books and records for the period of July 1, 2017 through the present, at the statutory rate and/or the rate set by the Independent Agreement;

K.      for payment of the imputed cost of the audit for the period of July 1, 2017, through the present, should an audit reveal that Rockmore is substantially delinquent in its payment of fringe benefit contributions to the Funds;

L.      for plaintiffs' reasonable attorneys' fees and costs incurred in connection with an audit of Rockmore's books and records for the period of July 1, 2017 through the present;

M.      for a permanent injunction prohibiting Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as Rockmore remains bound by the Independent Agreement, from failing, refusing or neglecting to: (i) report to the Funds all hours of Covered Work performed by Rockmore employees; (ii) pay all required fringe benefits contributions to the Funds; (iii) pay all dues checkoffs and PAC contributions for employees who perform Covered

Work and authorize such deductions in writing; and (iv) cooperate with an audit of its books and records for the period of July 1, 2017 through the present;

N.     for a permanent injunction prohibiting Rockmore, its agents, representatives, directors, officers, stockholders, successors and assigns, now and for as long as Rockmore remains obligated to do so by ERISA, from failing, refusing or neglecting to make all required fringe benefit contributions to the Funds;

O.     for plaintiffs' reasonable attorneys' fees and costs incurred in this action; and

P.     for such other and further relief as the Court deems just and proper.

Dated:   New York, New York
        November 22, 2017

GORLICK, KRAVITZ & LISTHAUS, P.C.
*Attorneys for Plaintiffs*

By: _____
     Bruce L. Listhaus (BL2381)
     Joy K. Mele (JM0207)
     17 State Street, 4th Floor
     New York, New York 10004
     blisthaus@gkllaw.com
     jmele@gkllaw.com
     Tel. (212) 269-2500
     Fax. (212) 269-2540